## Burger v. Bradford Supply Co.

May 28, 1943.

Charles H. Lowry for appellant.

L. B. Alexander for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

On the date shown therein, the appellant executed and delivered the following writing:

"In consideration of Pascal Pass conveying to me one drilling rig, 24L Bucyrus-Erie make, together with tools and equipment, I hereby assume and agree to pay all unpaid balances due as part of the purchase price for said equipments, tools, cables, etc. This 20th day of June, 1940.

"Frank C. Burger."

At that time Pass was indebted to appellee for the "equipment, tools, cables, etc." referred to, in the sum of $1,783.20, of which amount, $696.30 was secured by a lien created by an unrecorded conditional sales contract under which the property had been sold to him by appellee. This action was instituted by appellee in equity to recover of appellant on his assumption contract the amount named, and for a sale of the property covered by the lien. It resulted in a judgment awarding appellee the relief sought, and this appeal is from that judgment.

The defense interposed by answer was that appellant had no knowledge of, and did not assume appellee's claim; that a portion of the claim secured by the conditional sales contract was for labor performed by appellee for Pass; and that the articles covered thereby had been repossessed by appellee prior to the execution by appellant of the assumption agreement. The labor charges referred to, as nearly as can be determined from the invoices, aggregated approximately $100, and were for repairs of parts sold, including freight. On this appeal it is argued, not only that the appellant and his nephew, Carl Burger, at whose request he signed the contract, were ignorant of the existence of appellee's claim, but that the terms of the writing were insufficient to bind appellant for its payment; and that a conspiracy existed between the attorney who then represented the Burgers and appellee's attorney, who also represented Pass, to fasten liability upon appellant for the payment of the debt due appellee. Thus it becomes necessary to briefly set forth the salient facts disclosed by the testimony.

For several years, Carl Burger and Pass had been in litigation over an oil well which Pass had been employed by Burger to drill, and at the time the paper sued on was executed, there were six cases pending between them, in one of which appellant had been joined as a defendant. The writing was executed as a part of the compromise settlement of the actions referred, and it was

signed by appellant, instead of by Carl Burger, because Pass' attorney would not accept the undertaking of Carl Burger. In the contract of settlement between Pass and Carl Burger, it was expressly stated that Burger should assume and pay all sums owing on said "rig and tools." In a letter written to Carl Burger by his attorney in February, 1940, suggesting the desirability of a compromise of the pending litigation and requesting that Burger bring members of his family and any others he might desire to the attorney's office for a consultation, it was stated as one of the reasons why a settlement should be had, "if the drilling rig is taken from Pass, it is probable that the tools will be taken also as soon as Bradford Supply Company hears about it." The testimony in one of the actions between Pass and Carl Burger, filed as an exhibit, disclosed that Pass had stated in testifying that he owed "close to $1000.00" on "these tools used in the well," secured to the extent of approximately $700 by a lien; and that this indebtedness was in addition to a balance he owed for the drilling rig. It was stipulated that Pass would testify, if introduced as a witness, that in the settlement referred to it was agreed that appellant would assume and pay appellee's claim; and appellee's attorney, who, as before stated, represented Pass at that time, testified that the undertaking above referred to was an essential and thoroughly understood condition of the compromise. The lawyer who represented Carl Burger at the time of the settlement testified that it was his understanding that Burger was to assume the balance due on the tools as well as the balance due on the rig. In obedience to an order of the court requiring him to do so, he produced a memorandum which he had made of the terms of the settlement at the time it was agreed upon, the first four notations in which are as follows:

"B.—pay $2,000 & Court Costs

"P.—(1) Dismiss settle all suits and claims of every nature and kind.

"(2) Convey back title to Burger of lease.

"(3) Convey rig & tools, B. to assume balance owing thereon."

He further testified that during the course of the litigation between Pass and Carl Burger "it was repeated in many conversations" at which appellant was present, "that Bradford Supply Company had a claim

against the tools and that was understood when the memorandum was made.''

The proof, without considering that which appellee asserts was not included in the clerk's transcript, was sufficient to show that Carl Burger and appellant, notwithstanding their denials, knew that appellee's claim was among those to be assumed, and the language of the agreement was broad enough to include the claim. The charge of collusion between Burger's attorney and appellee's counsel was wholly unsubstantiated, and their character and standing in the profession are such as to repel, rather than incite, suspicion. In short, we have been unable to find any reason for disturbing the Chancellor's decree.

Judgment affirmed.